[No. A044784. First Dist., Div. One. July 23, 1990.]

RICHARD S. POWERS et al., Plaintiffs and Appellants, v. COUNTY OF SONOMA et al., Defendants and Respondents; FISHERMAN'S MARKETING ASSOCIATION, INC., et al., Interveners.

## COUNSEL

Derby, Cook, Quinby & Tweedt, Ernest N. Reddick, Richard C. Wootton and Timothy M. Gill for Plaintiffs and Appellants.

James P. Botz, County Counsel, and Jill D. Golis, Deputy County Counsel, for Defendants and Respondents.

Briceno & Freed and Mark J. Freed for Interveners.

## Opinion

STEIN, J.—This case involves the County of Sonoma's (County) refusal to issue a permit to the operators of two sportfishing boats for the use of Spud Point Marina as an embarkation and debarkation point for paying passengers.

Richard S. Powers, Richard H. Powers, and Jaws Sportfishing, Inc. (collectively, Powers), appellants herein, berth their two sportfishing boats at Spud Point Marina, in Bodega Harbor, in Sonoma County. The Powers use their boats to transport paying passengers to fishing grounds, and the passengers keep their catch. All berths at the marina are filled and parking is limited in the marina lot. A number of commercial fishermen, who take no passengers and sell their catch commercially, also use the marina. Use of the marina is strictly controlled and its users may not operate businesses, such as the sale of bait or fish, within the marina. The marina was designed and constructed under a state loan program specifically for the promotion of small craft harbors.

At the time that the marina opened in 1985, all sportfishing boats operating in Bodega Harbor loaded and unloaded customers at the Tides Wharf across the bay from the marina. After an accident in 1986, the Tides Wharf cancelled landing rights for sportfishing boats. Thereafter, except for the Powers, all sportfishing businesses relocated to Porto Bodega. The Powers obtained an injunction permitting their continued use of Tides Wharf and also initiated a request to be allowed to load passengers at the Spud Point Marina. The Board of Supervisors of Sonoma County determined that the Marina could not accommodate the possibly 100 additional persons a day resulting from sportfishing embarkation without construction of additional facilities. Although the Powers continue to berth at Spud Point Marina, they now operate their business from Porto Bodega.

The Powers filed a petition for writ of mandate, as well as a complaint for declaratory and injunctive relief, with the Superior Court for the County of Sonoma. The petition was denied on the ground that the board had discretion to grant or deny a permit. The Powers have appealed that order.

The Fisherman's Marketing Association, Inc., of Bodega Bay has intervened in this action on behalf of approximately 210 association members who are commercial fishermen operating from the Spud Point Marina.

They claim their livelihood would be affected by the loading and unloading of passengers at the marina.

I.

### Can the County Be Compelled to Allow Sportfishing Boats to Embark Passengers at the Spud Point Marina?

■ The Powers contend that section 40 of the Harbors and Navigation Code requires the board to issue a permit for the embarkation of passengers on sportfishing vessels at the marina.[1] The County does not contest that section 40 applies to the marina, but does dispute the effect of that section on the board of supervisors' discretion.

The Powers cite to the legislative history of the state loan program in support of their contention that the emphasized language, "open to all," was intended to compel every state-funded marina to permit use by sportfishing passengers. The legislative history does indicate consideration of the "important" business of sport and recreational fishing. (16 Assem. Interim Com. Rep. (1955-1957) No. 3, Marine Affairs, p. 15.) The County, however, contends that the "open to all" language of Harbors and Navigation Code section 40 does not require that each vessel owner be allowed to make *any* use of the marina.

The Powers also rely on an opinion prepared by the legislative counsel for State Senator Henry J. Mello. (Ops. Cal. Legis. Counsel, No. 22737 (Sept. 28, 1987) Public Docks and Marinas, pp. 6-7.) That opinion was premised on a prohibition against passenger embarkation on sportfishing vessels in Spud Point Marina "without a stated basis for the exclusion." The County has explicitly stated that, as a result of extensive study, the requested use would be inappropriate and strain the established commercial use of the marina facilities.

The Powers do not claim that the marina was designed for use as an embarkation point for sportfishing boats. Rather, they contend that such use should have been considered under the guidelines of the loan program and is recognized by Sonoma County Ordinance No. 3428 as an appropriate

---

[1] The specific language relied upon by the Powers provides, "Facilities in harbors and connecting waterways established under the provisions of this division shall be open to all on equal and reasonable terms; . . ."

use. That ordinance states that any charter vessel which carries passengers, a category which could include sportfishing boats, must receive a special permit from the County before using the marina. The mere existence of the ordinance, however, does not compel the granting of such permits.

Harbors and Navigation Code section 40 does not impose a mandatory duty upon the County to grant the Powers's requests but rather recognizes that the County has discretion to impose reasonable terms on the use of the Marina. The Powers have been permitted to berth their boats in the marina, and are subject to the same rules as all other berth holders. The Spud Point Marina is open to them on "equal and reasonable terms." The broad interpretation of the "open to all" language urged by the Powers would result in the complete inability of the County to restrict any use of the marina, such as bait or fish sales.

A writ of mandate will not lie to compel action by a public body which will invade its discretion. (*Sklar* v. *Franchise Tax Board* (1986) 185 Cal.App.3d 616, 622 [230 Cal.Rptr. 42].) The Sonoma County Board of Supervisors has been invested with the power to manage and control the Spud Point Marina. (Gov. Code, § 25353.) The Board must ensure that the marina is "open to all on equal and reasonable terms." (Harb. & Nav. Code, § 40.) Before denying the Powers a permit to embark passengers on their sportfishing vessels, the board held numerous hearings to determine whether such use could be allowed. The board's determination of the "reasonable terms" for the use of the marina is a matter of their discretion and cannot be mandated by the courts. (*Sklar* v. *Franchise Tax Board*, *supra*, 185 Cal.App.3d at p. 622.)

## II.

### HAVE THE POWERS BEEN DENIED THE RIGHT TO PURSUE A LAWFUL OCCUPATION?

The Powers, relying on *Purdy & Fitzpatrick* v. *State of California* (1969) 71 Cal.2d 566 [79 Cal.Rptr. 77, 456 P.2d 645, 38 A.L.R.3d 1194] and *People* ex rel. *Younger* v. *County of El Dorado* (1979) 96 Cal.App.3d 403 [157 Cal.Rptr. 815], assert that the Board's refusal to allow them to embark passengers at the marina violates the United States and California Constitutions in that their right to pursue a lawful occupation has been abridged. Six sportfishing boats operate in Bodega Harbor. All, including the Powers's boats, embark passengers at Porto Bodega, which is located only a short distance across the harbor from Spud Point Marina. Unlike the governmental action in the cases cited by the Powers, the County acted to

control conduct within the confines of County-owned property. They have not expressly restricted an entire profession, regardless of location, nor denied anyone access to navigable waters.

CONCLUSION

The denial of a writ of mandate is affirmed.

Racanelli, P. J., and Newsom, J., concurred.